UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2010-02
FEBRUARY 28, 2012 SESSION

FILED

FEB 29 2012

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES OF AMERICA

v.

CRIMINAL NO. 2:12-cr-00062

18 U.S.C. § 1347
18 U.S.C. § 1035
GOLDEN HEART IN HOME CARE, LLC.     18 U.S.C. § 371
SHIDA JAMIE                         18 U.S.C. § 1519
18 U.S.C. § 1957

I N D I C T M E N T

The Grand Jury Charges:

COUNT ONE

Background

At all relevant times:

1.    Medicaid was a health care benefit program, affecting
commerce, within the meaning of 18 U.S.C. § 24(b). Medicaid
provided medical assistance services to eligible indigent persons,
including aged, blind, and disabled individuals and families with
dependent children.    Medicaid services were authorized and
reimbursed within guidelines reflected in federal and state
regulations.

2.    Medicaid was administered by the Centers for Medicare and
Medicaid Services ("CMS"), a federal agency under the United States
Department of Health and Human Services ("HHS"), and the Bureau of
Medical Services ("BMS"), an agency of the West Virginia Department
of Health and Human Resources ("DHHR"). West Virginia implemented
two Medicaid programs, the Aged and Disabled Waiver ("ADW") program

and the Personal Care ("PC") program.  The United States Government covered between 72% and 83% of the funding for these Medicaid programs in West Virginia.

3.   The ADW program covered costs associated with long-term in-home care and support services to eligible individuals which were necessary to enable the individual to remain at home rather than enter a nursing facility, or to return home from a nursing facility.

4.   The ADW program services, performed in the individual's home by trained workers, provided assistance with health related issues such as walking, exercises, self-administered medications, reporting changes in the individuals condition and needs, and also included assistance with personal hygiene, nutritional support, and other household needs. The ADW program further covered costs associated with providing eligible individuals with transportation services for essential errands and community activities, but required that family, neighbors, friends, or community agencies that could provide transportation, without charge, be utilized first.

5.   The   PC   program   covered   assistance for eligible individuals in their homes, including assistance with dressing, meal preparation, and feeding.

6.   To be authorized to provide services and receive payment under the Medicaid programs, a person or entity rendering a service to Medicaid recipients first had to enter into a "provider

agreement" with West Virginia. The provider agreement required the Medicaid provider to abide by all applicable federal and state laws, including policy manuals, policy changes and other documents governing the ADW and PC programs. Among other requirements, to protect the health, welfare and safety of the individuals receiving care, the ADW and PC Medicaid programs required providers to employ qualified personnel who met minimum credential and training criteria. The Medicaid provider was required to conduct criminal background checks on employees and was prohibited from hiring individuals who had previously been convicted of certain specified crimes.

7.    Medicaid providers were required to create and maintain documents supporting the claims submitted to Medicaid. These documents included, among others, the personnel records of all employees hired by the Medicaid provider to provide in-home care, which specifically included training records and the criminal background checks; as well as patient records, nursing assessments, and other records documenting the actual services provided. Medicaid providers were required to produce these documents upon request of federal or state authorities for audit or review to ensure compliance with billing regulations and program goals.

8.    The West Virginia Medicaid Fraud Control Unit ("MFCU"), in accordance with a mandate from the United States Government, was authorized to investigate and prosecute Medicaid fraud.

9.   Defendant GOLDEN HEART IN HOME CARE, LLC. ("GOLDEN HEART") was a West Virginia corporation having its headquarters located in St. Albans, Kanawha County, West Virginia. At various times, GOLDEN HEART maintained offices in Clay and Montgomery, West Virginia.

10.   Defendant SHIDA JAMIE was the owner and operator of GOLDEN HEART.

11.   In August 2006, SHIDA JAMIE on behalf of GOLDEN HEART entered into a provider agreement with BMS to provide ADW program services and receive reimbursement through Medicaid.

12.   Putnam County Aging Program, Inc. ("Putnam Aging") was a West Virginia corporation having its headquarters in St. Albans, West Virginia.   Putnam Aging was enrolled as a West Virginia Medicaid provider through the PC program.   In or about July 2006 through April 2010, GOLDEN HEART and SHIDA JAMIE contracted with Putnam Aging to provide PC program services for clients of Putnam Aging.

13.   GOLDEN HEART submitted claims to Medicaid for reimbursement for services under the ADW program.   GOLDEN HEART submitted claims to Medicaid for reimbursement for PC services indirectly through Putnam Aging.

14.   In submitting claims for Medicaid reimbursement, SHIDA JAMIE certified that each claim was true, accurate and complete, and specifically further acknowledged that she understood that claims were paid by federal and state funds and that, any

4

falsification or concealment of a material fact was a crime under federal and state law.

15.   To receive payment through Medicaid, GOLDEN HEART was required to abide by all applicable federal and state laws, including policy manuals, policy changes and other documents governing the ADW and PC programs.

16.   GOLDEN HEART was required to ensure that its employees hired to provide in-home care ("caregivers") to Medicaid recipients ("GOLDEN HEART'S clients") received 8 hours of training before providing in-home care services.  It was mandated that this initial 8 hour training include:

    a.    Orientation to the GOLDEN HEART agency, community, and services, including responsibilities regarding reporting changes in GOLDEN HEART clients' condition and needs;

    b.    Personal Care skills including, but not limited to, bathing, grooming, feeding, toileting, transferring, positioning, ambulation, range of motion, and vital signs;

    c.    Accident prevention and safety;

    d.    Occupational Safety and Health Administration ("OSHA") standards related to blood-borne pathogens and Cardiopulmonary Resuscitation ("CPR"), and First Aid Training;

    e.    Adult Abuse, Neglect and Exploitation; and

    f.    Confidentiality laws and regulations (HIPAA).

17.   GOLDEN HEART was required to ensure that within the first year of employment all caregivers received an additional 24 hours

of training for a total of 32 hours of training in the first year of employment.

18.   GOLDEN  HEART  was  further  required  to  ensure  its caregivers received 8 hours of annual in-service training designed to  develop  special  skills  or  enhance  skills  learned  in  basic training.

19.   GOLDEN HEART was further required to provide OSHA, First Aid,  Adult  Abuse,  and  Neglect  and  Exploitation  training  every twelve months.

20.   GOLDEN  HEART  was  further  required  to  ensure  its caregivers  maintained  CPR  certifications  in  compliance  with American Heart Association or American Red Cross requirements.

21.   Linda Gray, named herein as an unindicted co-conspirator and aider and abetter, was employed by defendant SHIDA JAMIE and GOLDEN HEART to provide training to employees of GOLDEN HEART.

22.   GOLDEN HEART was prohibited from hiring any individual as a caregiver if that individual had a felony drug-related conviction within  10  years  of  the  employment,  among  other  criminal convictions.

### The Scheme to Defraud

23.   From in or about August 2006 and continuing through April 2010, at or near Charleston and St. Albans, Kanawha County, West Virginia, and Clay, Clay County, West Virginia, within the Southern District of West Virginia and elsewhere, defendants GOLDEN HEART and SHIDA JAMIE, aided and abetted by Linda Gray and others known

and unknown to the Grand Jury, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud, and to obtain money owned by and under the care and custody of Medicaid by means of materially false and fraudulent pretenses, representations and promises, and concealment of material facts, in connection with the delivery of and payment for health care benefits and services.

### Purpose of the Scheme

24.   It was a purpose of the scheme for defendants GOLDEN HEART and SHIDA JAMIE to enrich themselves and to obtain reimbursement for services from Medicaid that, if provided, were provided by unauthorized or unqualified persons and to conceal these facts from Medicaid.

### Manner and Means for Carrying Out the Scheme

GOLDEN HEART and SHIDA JAMIE carried out the scheme to defraud in the following ways, among others:

25.   It was part of the scheme to defraud that GOLDEN HEART and SHIDA JAMIE failed to provide the mandatory minimum 8 hours training prior to placing new caregivers in a home to provide Medicaid services to its clients.

26.   It was further a part of the scheme that SHIDA JAMIE directed GOLDEN HEART's office staff to ignore the training requirements and send caregivers into homes to provide services to its clients without providing any training whatsoever.

27.   It was further part of the scheme that GOLDEN HEART and SHIDA JAMIE failed to comply with all training requirements, that

7

is, GOLDEN HEART did not provide the mandatory minimum 8 hours training to caregivers, never provided a total of 32 hours training to caregivers within the first year of employment, and failed to provide 8 hours of annual in-service training to caregivers.

28.  It was further a part of the scheme that GOLDEN HEART and SHIDA JAMIE directed Linda Gray and at least one other employee known to the Grand Jury as C.C. to obtain American Red Cross certifications for caregivers to maintain in the caregivers' personnel files which were false in the following respects:

a.  The nominal training actually provided was insufficient and did not satisfy American Red Cross requirements;

b.  The American Red Cross cards were backdated and did not reflect the true dates of the nominal training;

c.  The requests for American Red Cross cards falsely represented that the training had taken place over a number of days and the training lasted for a number of hours well beyond the time actually spent in training; and

d.  American Red Cross cards were obtained for individuals who had, in fact, received no training.

29.  It was further a part of the scheme that GOLDEN HEART and SHIDA JAMIE created additional false documentation to maintain as a part of the caregivers' personnel files falsely reflecting that the caregivers had been trained as mandated by the Medicaid guidelines.  These false training records included, among others:

a.  Health Insurance Portability and Accountability Act

("HIPPA") Acknowledgment form, certifying the completion of required HIPPA training on the use and disclosure of protected health information;

> b.    Certificate certifying that the caregiver completed 32 hours of homemaker training;

> c.    Employee Training Log designating the dates, hours, and description of 32 hours of training;

> d.    In-service Evaluation Form for Abuse and Neglect training;

> e.    Documentation of In-service Confidentiality training;

> f.    HIPPA-Patient Confidentiality test;

> g.    Certificate certifying the completion of 8 hour in-service training;

> h.    Sign-in sheet for 32 hour training and 8 hour annual in-service training;

> i.    Verification of the caregiver's participation in training;

> j.    American Red Cross training tests; and

> k.    American Red Cross cards.

30.    It was further a part of the scheme that GOLDEN HEART and SHIDA JAMIE directed its caregivers to sign and certify the false training documents.

31.    It was further a part of the scheme that GOLDEN HEART and SHIDA JAMIE directed Linda Gray and office staff to backdate all

9

training records to a date prior to the date the caregiver provided in-home care to a GOLDEN HEART client so the services would be covered by Medicaid.

32.   It was further a part of the scheme that GOLDEN HEART and SHIDA JAMIE knowingly hired individuals who had felony convictions for drug offenses, among other disqualifying convictions, as in-home caregivers.

33.   It was further a part of the scheme that GOLDEN HEART and SHIDA JAMIE directed nursing staff to create and backdate nursing assessments, including initial client evaluations, six-month and annual assessments to maintain in patient files and to falsely bill Medicaid for these assessments as if they had been performed on the stated date.

34.   It was further a part of the scheme that GOLDEN HEART and SHIDA JAMIE encouraged caregivers to submit reports for excessive transportation mileage and would thereafter bill Medicaid for the full amounts reported well knowing, that in multiple instances, the transportation mileage claimed was false.

35.   It was further a part of the scheme that GOLDEN HEART and SHIDA JAMIE hired caregivers who did not have a valid driver's license to provide in-home services to GOLDEN HEART's ADW program clients and allowed those caregivers to submit reports for transportation mileage which she thereafter billed to Medicaid.

36.   It was further a part of the scheme that GOLDEN HEART and SHIDA JAMIE encouraged caregivers to submit reports for all hours

of care allotted under the ADW or PC programs to each client and further assigned caregivers multiple clients knowing they could not perform the type of service required by each client for the full time period allotted to each client and knowingly billed Medicaid for services the caregivers could not have performed.

37.   From in or about August 2006 to April 2010, GOLDEN HEART received millions of dollars from Medicaid to which it was not entitled.

In violation of Title 18, United States Code, Section 1347.

## COUNT TWO

(False Statements Relating to Health Care Matters)

1.    The Grand Jury realleges paragraphs 1-22 and 25-36 of Count One as if fully set forth herein.

2.    On at least two occasions between September 2007 and September 2009, Linda Gray, as directed by SHIDA JAMIE, obtained American Red Cross cards for an individual known to the Grand Jury as J.J. certifying that Linda Gray had provided CPR, Blood Borne Pathogens, and Standard First Aid training to J.J. when, as SHIDA JAMIE and Linda Gray knew, J.J. had not received such training.

3.    Between 2007 and 2009, other documentation was falsely created and signed to make it appear as if J.J. had received training in compliance with the Medicaid programs and was thereafter placed in J.J.'s personnel file when, in fact, J.J. had received no training.

4.    Between July 2007 and September 2009, SHIDA JAMIE prepared and signed caregiver worksheets for a GOLDEN HEART client known to the Grand Jury as H.S., falsely representing that specific services had been performed by J.J. for GOLDEN HEART client H.S. and that such worksheets had been completed and signed by J.J.

5.    Between July 2007 and October 2009, GOLDEN HEART and SHIDA JAMIE billed Medicaid in excess of $25,000 for in-home care services and transportation mileage purportedly rendered by J.J. which services were not performed by J.J. or, if performed by J.J., were, therefore, performed by an untrained caregiver.

6.    From in or about July 2007 through in or about October 2009, at or near Charleston and St. Albans, Kanawha County, West Virginia, within the Southern District of West Virginia, defendants GOLDEN HEART and SHIDA JAMIE, aided and abetted by Linda Gray and others known and unknown to the Grand Jury, in a matter involving a health care benefit program, affecting commerce, knowingly and willfully:

a.    falsified, concealed, and covered up by trick, scheme, and device material facts;

b.    made materially false, fictitious, and fraudulent statements and representations; and,

c.    made and used materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries.

All in connection with the delivery of and payment for health care benefits and services related to the submission of claims to Medicaid involving J.J.

In violation of Title 18, United States Code, Sections 1035 and 2.

## COUNT THREE

(False Statements Relating to Health Care Matters)

1.    The Grand Jury realleges paragraphs 1-22 and 25-36 of Count One as if fully set forth herein.

2.    On or about June 6, 2008, GOLDEN HEART hired an individual known to the Grand Jury as M.A. as an in-home caregiver.

3.    At the time he was hired, M.A. had been convicted of a felony drug offense on or about March 1, 2004.

4.    M.A. did not have a valid driver's license during his employment with GOLDEN HEART.

5.    GOLDEN HEART placed M.A. in homes to provide Medicaid services to clients before M.A. received any training whatsoever; falsified American Red Cross certifications and other training documents to make it appear as if M.A. had been trained as mandated; and backdated the training documents to late March and early April 2008, to make it appear as if M.A. had received mandatory training prior to being placed in the home to care for GOLDEN HEART clients.

6.    Thereafter, training records in M.A.'s personnel file were further altered and falsely created to make it appear as if M.A. had received additional training in compliance with the Medicaid programs.

7.    From in or about June 2008 to in or about September 2009, at or near Charleston and St. Albans, Kanawha County, West Virginia, within the Southern District of West Virginia, defendants

14

GOLDEN HEART and SHIDA JAMIE, aided and abetted by Linda Gray and others known and unknown to the Grand Jury, in a matter involving a health care benefit plan, affecting commerce, knowingly and willfully:

      a.   falsified, concealed, and covered up by trick, scheme, and device material facts;

      b.  made materially false, fictitious, and fraudulent statements and representations; and,

      c.  made and used materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries.

All in connection with the delivery of and payment for health care benefits and services related to the submission of claims to Medicaid involving M.A.

In violation of Title 18, United States Code, Sections 1035 and 2.

## COUNT FOUR

(False statements relating to Health Care matters)

1.    The Grand Jury realleges paragraphs 1-22 and 25-36 of Count One as if fully set forth herein.

2.    On or about July 29, 2008, GOLDEN HEART hired L.C. as an in-home caregiver.

3.    L.C. did not receive training as mandated, however, training records in L.C.'s personnel file were falsely altered and created to make it appear as if L.C. received training in compliance with the Medicaid programs.

4.    On or about February 19, 2009, while employed by GOLDEN HEART L.C. was convicted of a felony drug offense.

5.    From in or about July 29, 2008, to in or about July 2009, at or near Charleston and St. Albans, Kanawha County, West Virginia, with the Southern District of West Virginia, defendants GOLDEN HEART and SHIDA JAMIE, aided and abetted by Linda Gray and others known and unknown to the Grand Jury, in a matter involving a health care benefit plan, affecting commerce, knowingly and willfully:

    a.    falsified, concealed, and covered up by trick, scheme, and device material facts;

    b. made materially false, fictitious, and fraudulent statements and representations; and

16

    c.  made and used materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries.

All in connection with the delivery of and payment for health care benefits and services related to the submission of claims to Medicaid involving L.C.

In violation of Title 18, United States Code, Sections 1035 and 2.

## COUNT FIVE

(False Statements Relating to Health Care Matters)

1.    The Grand Jury realleges paragraphs 1-22 and 25-36 of Count One as if fully set forth herein.

2.    From in or about late September 2008 to April 20, 2010, T.B. was employed by GOLDEN HEART as an in-home caregiver.

3.    T.B. did not receive training as mandated, however, training records in T.B.'s file were falsely altered and created to make it appear as if T.B. received training in compliance with the Medicaid program.

4.    T.B. had previously been convicted of a disqualifying felony drug offenses on or about August 17, 2006.

5.    T.B. did not have a valid driver's license between September 2008 and August 22, 2009.

6.    From in or about September 2008 to in or about April 2010, at or near Charleston and St. Albans, Kanawha County, West Virginia, within the Southern District of West Virginia, defendants GOLDEN HEART and SHIDA JAMIE, aided and abetted by Linda Gray and others known and unknown to the Grand Jury, in a matter involving a health care benefit plan, affecting commerce, knowingly and willfully:

        a.    falsified, concealed, and covered up by trick, scheme, and device material facts;

        b. made materially false, fictitious, and fraudulent statements and representations; and

18

c.  made and used materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries.

All in connection with the delivery of and payment for health care benefits and services related to the submission of claims to Medicaid involving T.B.

In violation of Title 18, United States Code, Sections 1035 and 2.

19

## COUNTS SIX AND SEVEN

(False Statements Relating to Health Care Matters)

1.    The Grand Jury realleges paragraphs 1-22 and 25-36 of Count One as if fully set forth herein.

2.    GOLDEN HEART and SHIDA JAMIE hired Registered Nurse K.B. on or about July 1, 2009.

3.    K.B.'s duties at GOLDEN HEART included performing initial, annual and six-month nursing assessments for GOLDEN HEART's clients.

4.    SHIDA JAMIE and others known and unknown to the Grand Jury directed K.B. to backdate certain nursing assessments for GOLDEN HEART clients.

5.    After K.B. backdated the nursing assessments, SHIDA JAMIE and GOLDEN HEART then caused false claims to be submitted to Medicaid for reimbursement of services as if those services had been performed on the date stated in the nursing assessments, when in fact, the services had not been performed on those dates.

6.    On or about October 19, 2009, at or near Charleston and St. Albans, Kanawha County, West Virginia, within the Southern District of West Virginia, defendants SHIDA JAMIE and GOLDEN HEART and others known and unknown to the Grand Jury knowingly and willfully:

    a.    falsified, concealed, and covered up by trick, scheme, and device material facts;

        b.  made  materially  false,  fictitious,  and  fraudulent
statements and representations; and

        c.  made and used materially false writings and documents
knowing  the  same  to  contain  materially  false,  fictitious,  and
fraudulent statements and entries.

    All in connection with the delivery of and payment for health
care  benefits  and  services  related  to  the  submission  of  the
following claims to Medicaid:

| Count | Client | Alleged Date of Service | Claim Number |
|-------|--------|-------------------------|--------------|
| SIX   | H.H.   | May 17, 2009            | 09292E001692 |
| SEVEN | C.F.   | April 29, 2009          | 09292E001685 |

    In violation of Title 18, United States Code, Sections 1035
and 2.

## COUNT EIGHT

(Conspiracy)

1.    The Grand Jury realleges paragraphs 1-22 and 25-36 of Count One as if fully set forth herein.

### The Conspiracy

2.    From in or about August 2009 and continuing to April 2010, at or near St. Albans, Kanawha County, West Virginia and Clay, Clay County, West Virginia, within the Southern District of West Virginia and elsewhere, defendants GOLDEN HEART and SHIDA JAMIE did knowingly conspire with Linda Gray and others known and unknown to the Grand Jury to commit an offense against the United States in violation of 18 U.S.C. § 1519, that is,

a.    knowingly alter and falsify records and documents of GOLDEN HEART with the intent to impede, obstruct, and influence the investigation and proper administration of matters within the jurisdiction of the Department of Health and Human Services and Centers for Medicare and Medicaid Services, a department and agency of the United States; and

b.    knowingly alter and falsify records and documents of GOLDEN HEART in relation to or contemplation of any such matter or case.

### Purpose of the Conspiracy

3.    It was a purpose of the conspiracy for defendants GOLDEN HEART and SHIDA JAMIE to conceal from Medicaid its failure to comply with program requirements thereby ensuring GOLDEN HEART's

22

continued participation in Medicaid programs and reimbursement for Medicaid services, as well as to avoid the payment of penalties and repayment of claims which were falsely made.

Manner and Means of the Conspiracy

4.   It a part of the conspiracy that GOLDEN HEART and SHIDA JAMIE directed office staff to review files for missing documentation and place into the files newly created training documents and certifications, which actions included backdating all documents, verifying training which, in fact, had not occurred on the dates and for the durations reflected, and in some instances, falsifying caregivers' signatures on training documents, or having caregivers sign documents which were false in that they represented training which had not occurred.

5.   It was a part of the conspiracy that GOLDEN HEART and SHIDA JAMIE and others known and unknown to the Grand Jury falsified client files and personnel files to conceal the fact that GOLDEN HEART was billing for transportation services purportedly performed by caregivers who did not have valid drivers' licenses and others who were falsely reporting transportation services which were not performed.

Overt Acts

In furtherance of and to effect the objects of the conspiracy, defendants GOLDEN HEART and SHIDA JAMIE and others known and unknown to the Grand Jury committed the following and other overt acts within the Southern District of West Virginia and elsewhere:

6.   In mid to late August 2009 or early September 2009, defendant SHIDA JAMIE, Linda Gray, and others known and unknown to the Grand Jury reviewed personnel files of caregivers performing services under the PC program.

7.   In mid to late August 2009 or early September 2009, defendant SHIDA JAMIE, Linda Gray, and others known and unknown to the Grand Jury falsely created and altered training documents and placed them in the personnel files of GOLDEN HEART caregivers to make it appear as if the caregivers had received training in compliance with the PC program when, in fact, they had not.

8.   In early September, SHIDA JAMIE or others at her direction, provided the altered and falsified personnel files to Putnam Aging, thereby ensuring Putnam Aging would allow the Medicaid program to be billed for PC services rendered by GOLDEN HEART employees under contract with Putnam Aging.

9.   Thereafter, and continuing through early 2010, SHIDA JAMIE directed office staff to review all personnel files to ensure that the files showed that GOLDEN HEART had hired and trained its caregivers in compliance with the Medicaid programs and further, if such documentation did not exist, directed them to create, alter and falsify documents to place in the personnel files.

10.   Beginning in or about January 2010, and upon learning an MCFU investigator was questioning, among other things, reimbursement from the ADW program for transportation mileage, SHIDA JAMIE directed office staff to review files to determine if

24

the files contained valid driver's licenses for caregivers providing services under the ADW program.

11.   When it was discovered that a caregiver did not have a valid driver's license, SHIDA JAMIE directed office staff to alter existing records which documented transportation services provided by the unlicensed caregiver, and create new records to make it appear as if a caregiver with a valid driver's license had instead performed the transportation services, and thereafter directed caregivers and registered nurses to sign the falsely created worksheets.

12.   Between in or about January 26, 2010, to on or about April 8, 2010, SHIDA JAMIE and at least three other employees of GOLDEN HEART known to the Grand Jury altered existing records and falsely created and signed records documenting transportation services for two GOLDEN HEART clients, T.K. and J.P., to make it appear as if a licensed caregiver had provided transportation services for T.K. and J.P. from at least June 2008 to February 2010, when, in fact, the licensed caregiver had not.

13.   On April 8, 2010, the false records documenting transportation services for T.K. and J.P. were provided to a MFCU investigator.

14.   On or about a date unknown but in or near April 2010, a GOLDEN HEART employee known to the Grand Jury falsely created a personnel file for an individual, J.W., who was not an employee of

GOLDEN HEART, which file included false training records, among others.

15.   On a date unknown but in or near April 2010, a GOLDEN HEART employee known to the Grand Jury altered existing records and falsely created new records documenting transportation services for GOLDEN HEART client D.S. to make it appear as if J.W. was the individual providing the transportation services for D.S. from at least December 2007 to December 2009.

16.   On a date unknown, but in or after September 2009, after an MCFU investigator questioned GOLDEN HEART clients known to the Grand Jury as O.T. and G.T. on matters related to their Medicaid services, their caregiver, known to the Grand Jury as L.A. contacted SHIDA JAMIE and informed SHIDA JAMIE that entries on the worksheets for clients O.T. and G.T, as well as two other GOLDEN HEART clients known to the Grand Jury as T.L.T. and T.G.T., in many instances falsely reflected that the transportation had been for doctor appointments for the four clients when, in fact, it had not.

17.   Thereafter, but before April 10, 2010, knowing that Medicaid could determine whether such transportation services had in fact been for doctor appointments, SHIDA JAMIE directed a staff employee of GOLDEN HEART to provide original worksheets for the four GOLDEN HEART clients to L.A. for the purpose of having L.A. alter the worksheets.

18.   Thereafter, but before April 10, 2010, at the direction of SHIDA JAMIE, L.A. altered the worksheets to make it appear that

the transportation had occurred for some other activity or to some other location rather than doctor appointments and returned the altered worksheets to GOLDEN HEART.

In violation of Title 18, United States Code, Section 371.

## COUNT NINE

(Alteration and Falsification of Records)

1.     The Grand Jury realleges paragraphs 1-22 and 25-36 of Count One as if fully set forth herein.

2.     On or about November 17, 2009, and December 29, 2009, GOLDEN HEART was issued subpoenas by MCFU for records for the personnel file of GOLDEN HEART employee known to the Grand Jury as D.W. and the patient files of two GOLDEN HEART clients, T.K. and J.P., in connection with an ongoing investigation of GOLDEN HEART.

3.     On or about January 26, 2010, D.W. was questioned by an investigator with the MCFU about GOLDEN HEART billing for transportation services allegedly performed by D.W. for clients T.K. and J.P. when D.W. did not have a valid driver's license.

4.     At the direction of SHIDA JAMIE, an employee of GOLDEN HEART known to the Grand Jury altered existing records documenting transportation services provided for T.K. and J.P. and falsely created and signed new records to make it appear as all of the transportation services for clients T.K. and J.P. from at least June 2008 to February 2010 had been performed by another GOLDEN HEART caregiver, who did, in fact, have a valid driver's license.

5.     On April 8, 2010, the false records documenting transportation services for T.K. and J.P. were provided to a MCFU investigator.

6.     The personnel file of D.W. was altered to include the driver's license of the other GOLDEN HEART employee.

28

7.    Between 2008 and 2010, GOLDEN HEART submitted claims to Medicaid for transportation for services allegedly performed by caregiver D.W. for GOLDEN HEART clients T.K. and J.P. and were paid in excess of $11,000.

### Alteration and Falsification of Records

8.    Between January 26, 2010, and April 8, 2010, defendants GOLDEN HEART and SHIDA JAMIE, aided and abetted by each other and others known to the Grand Jury, at or near St. Albans, Kanawha County, West Virginia, within the Southern District of West Virginia and elsewhere, did knowingly:

a.    alter and falsify records and documents of GOLDEN HEART with the intent to impede, obstruct, and influence the investigation and proper administration of matters within the jurisdiction of the Department of Health and Human Services and the Centers for Medicare and Medicaid Services, a department and agency of the United States; and

b.    alter and falsify records and documents of GOLDEN HEART in relation to or contemplation of any such matter or case.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNTS TEN THROUGH EIGHTEEN

(Engaging in Illegal Monetary Transactions)

1.    The Grand Jury realleges paragraphs 1-22 and 25-36 of Count One of this indictment as if fully set forth herein.

2.    At all relevant times, SHIDA JAMIE maintained a personal checking account at Branch Banking and Trust ("BB&T"), account number XXXXXXXXX3382.

3.    At all relevant times SHIDA JAMIE maintained a checking account at JP Morgan Chase Bank, N. A.("Chase Bank") on behalf of GOLDEN HEART, account number XXXXXX2530.

4.    At all relevant times, payments from Medicaid were sent electronically to the GOLDEN HEART Chase Bank account number XXXXXX2530.

5.    At all relevant times, payments to GOLDEN HEART from Putnam Aging pursuant to its contract with GOLDEN HEART to provide Medicaid services under the PC program were deposited into the GOLDEN HEART Chase Bank account number XXXXXX2530.

6.    On or about October 2, 2008, SHIDA JAMIE purchased 1.3074 acres of land located in Charleston, Kanawha County, West Virginia, commonly known as Quarry Creek, for $175,000.

7.    SHIDA JAMIE obtained a $165,000 advance on a line of credit through SunTrust Bank to finance the purchase of the Quarry Creek property, and used her personal residence at 1998 Parkwood Road, Charleston, Kanawha County, West Virginia as collateral for the loan.  Thereafter, SHIDA JAMIE obtained additional advances on

30

the line of credit to fund construction of a new home on the Quarry Creek property.

8.    At all relevant times, Chase Bank, BB&T and SunTrust Bank were financial institutions as defined in 31 U.S.C. § 5312(a)(2), which were engaged in, and the activities of which affected, interstate commerce.

9.    On or about the date indicated below for each Count, at or near St. Albans, Kanawha County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant SHIDA JAMIE knowingly engaged in and caused others to engage in a monetary transaction affecting interstate commerce in criminally derived property, that was of a value greater than $10,000, and that was derived from a specified unlawful activity, that is, health care offenses, in violation of 18 U.S.C. §§ 1347 and 1035 by causing the withdrawal and transfer of funds and monetary instruments from Chase Bank account number XXXXXX2530 as set forth below.

10.    While engaging in and causing others to engage in the monetary transactions, defendant SHIDA JAMIE knew that the property involved in the monetary transaction was criminally derived.

| Count | Date | Amount | Transaction |
|-------|------|--------|-------------|
| TEN | 2/15/09 | $60,000.00 | Withdrawal of funds via check #8944 from GOLDEN HEART Chase Bank account number XXXXXX2530 deposited to SHIDA JAMIE's personal bank account at BB&T |

31

ELEVEN      3/20/09    $20,000.00        Withdrawal of funds via check #9169 from GOLDEN HEART Chase Bank account number XXXXXX2530 deposited to SHIDA JAMIE's personal bank account at BB&T

TWELVE      4/17/09    $30,000.00        Withdrawal of funds via check #9355 from GOLDEN HEART Chase Bank account number XXXXXX2530 deposited to SHIDA JAMIE's personal bank account at BB&T

THIRTEEN    5/15/09    $30,000.00        Withdrawal of funds via check #9576 from GOLDEN HEART Chase Bank account number XXXXXX2530 deposited to SHIDA JAMIE's personal bank account at BB&T

FOURTEEN    6/16/09    $20,000.00        Withdrawal of funds via check #9813 from GOLDEN HEART Chase Bank account number XXXXXX2530 to transfer to SHIDA JAMIE's personal bank account at BB&T

FIFTEEN     10/20/09   $20,084.15        Withdrawal of funds via check #10891 from GOLDEN HEART Chase Bank account number XXXXXX2530 to SunTrust Bank to pay on the Quarry Creek property loan at SunTrust Bank

SIXTEEN     11/20/09   $25,106.40        Withdrawal of funds via check #11235 from GOLDEN HEART Chase Bank account number XXXXXX2530 to SunTrust Bank to pay on the Quarry Creek property loan at SunTrust Bank

SEVENTEEN   2/17/10    $40,000.00        Withdrawal of funds via check #12090 from GOLDEN HEART Chase Bank account number XXXXXX2530 payable to a construction company as a down payment for site work on SHIDA JAMIE's home on Quarry Creek

EIGHTEEN    3/31/2010  $25,000.00        Withdrawal of funds via check #12538 from GOLDEN HEART Chase Bank account number XXXXXX2530

payable to a construction company as a down payment on defendant Shida Jamie's home on Quarry Creek

In violation of Title 18, United States Code, Section 1957.

## FORFEITURE FOR HEALTH CARE FRAUD OFFENSES
## 18 U.S.C. §§ 1035, 1347

In accordance with 18 U.S.C. § 982(a)(7) and Rule 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon the conviction of the defendants GOLDEN HEART IN HOME CARE, LLC, and SHIDA JAMIE of one or more violations of 18 U.S.C. §§ 1035, 1347, as set forth in Counts One through Seven of this Indictment, the defendants shall forfeit to the United States any property, real or personal, constituting or derived, directly or indirectly, from gross proceeds traceable to such offense including, but not limited to, the following:

1.   The sum of $2.2 million dollars, more or less, in United States currency in that such sum in aggregate constitutes the gross proceeds derived by the defendants as a result of and during the course of the offense charged in Count One of this Indictment, and for which sum the United States will seek the entry of a judgment;

2.   The sum of $25,000.00, more or less, in United States currency in that such sum in aggregate constitutes the gross proceeds derived by the defendants as a result of and during the course of the offense charged in Count Two of this Indictment, and for which sum the United States will seek the entry of a judgment;

3.   Real property having a street address of 105 Graff Lane, Quarry Creek, Charleston, Kanawha County, West Virginia, being a vacant lot containing 1.3074 acres, more or less, together with all improvements thereon and appurtenances thereto, and being more

particularly described in that certain deed dated October 2, 2008, and recorded in the Office of the Clerk of the County Commission for Kanawha County, West Virginia, in Deed Book 2730 at page 184;

4.   The sum of $13,458.50, more or less, in United States currency constituting the balance of BB&T Account No. XXXXXXXXX3382, in Shida Jamie's name, at the time of its seizure on August 12, 2010 (CATS No. 10-FBI—005446);

5.   The sum of $25,937.15, more or less, in United States currency, constituting the balance of Clay County Bank Account No. XX8874, in the name of "Golden Heart In Home Care, LLC," at the time of its seizure on August 12, 2010, (CATS No. 10-FBI-005476);

6.   The sum of $57,750.00, more or less, in United States currency, constituting the balance of Clay County Bank Account No. XX5477, in the name of "Golden Heart In Home Care Services, LLC," at the time of its seizure on August 12, 2010 (CATS No. 10-FBI-005477);

7.   The sum of $222,046.72, more or less, in United States currency, constituting the balance of JP Morgan Chase Bank Account No. XXXXXX2530, in the name of "Golden Heart In Home Care Services, LLC," at the time of its seizure on August 16, 2010 (CATS No. 10-FBI-005478); and

8.   One 2007 Mercedes Benz S550V4 Sedan, VIN WDDNG86X57A114834 (CATS No. 10-FBI-005445).

## FORFEITURE FOR ILLEGAL MONETARY TRANSACTION OFFENSES
## 18 U.S.C. § 1957(a)

In accordance with 18 U.S.C. § 982(a)(1) and Rule 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon the conviction of the defendant SHIDA JAMIE of one or more violations of 18 U.S.C. § 1957, as set forth in Counts Ten through Eighteen of this Indictment, the defendant SHIDA JAMIE shall forfeit to the United States any property, real or personal, involved in the said offense, and any property traceable to property involved in the offense, including but not limited to the following:

1.   Real property having a street address of 105 Graff Lane, Quarry Creek, Charleston, Kanawha County, West Virginia, being a vacant lot containing 1.3074 acres, more or less, together with all improvements thereon and appurtenances thereto, and being more particularly described in that certain deed dated October 2, 2008, and recorded in the Office of the Clerk of the County Commission for Kanawha County, West Virginia, in Deed Book 2730 at page 184;

2.   Real property having a street address of 1998 Parkwood Road, Charleston, Kanawha County, West Virginia, together with all improvements thereon and appurtenances thereto, and being more particularly described in those certain deeds dated May 23, 1993, and September 12, 2006, and recorded in the Office of the Clerk of the County Commission for Kanawha County, West Virginia, in Deed Book 2317 at page 162 and Deed Book 2673 at page 572, respectively;

3.   The sum of $13,458.50, more or less, in United States currency constituting the balance of BB&T Account No. XXXXXXXXX3382, on August 12, 2010 (CATS No. 10-FBI—005446); and

4.   The sum of $222,046.72, more or less, in United States currency, constituting the balance of JP Morgan Chase Bank Account No. XXXXXX2530, on August 16, 2010 (CATS No. 10-FBI-005478).

R. BOOTH GOODWIN II
United States Attorney

By: _____

SUSAN M. ROBINSON
Assistant United States Attorney